UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Wyman Kassa,** <br> **Brian Waylund,** <br> **Jamie Waylund,** <br> **individually and on behalf of others** <br> **similarly situated,** <br><br> Plaintiffs, <br><br> v. <br><br> **Kerry Inc.,** <br><br> Defendant. | **Civil No. 06-0904 (PJS-JJG)** <br><br><br><br> **REPORT** <br> **AND** <br> **RECOMMENDATION** |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came before the undersigned for a hearing on September 21, 2006. Defendant Kerry moves for summary judgment (Doc. No. 12). Patricia A. Bloodgood, Esq., and Susan E. Ellingstad, Esq., appeared on behalf of the plaintiffs. Robert H. Brown, Esq., appeared on behalf of defendant Kerry. This motion is assigned to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

**I.   BACKGROUND**

The plaintiffs in this litigation bring a collective action under the Fair Labor Standards Act (FLSA) and a class action under the Minnesota Fair Labor Standards Act (MFLSA). They allege that their employer, defendant Kerry, failed to pay compensation for time spent putting on and taking off uniforms and protective gear.

Kerry operates a food processing plant, and for each shift, it provides employees with a clean uniform consisting of pants, a shirt, and a smock. Employees may also be required to wear gloves, hairnets, and safety glasses. The record does not precisely disclose employees' duties, nor does it indicate what safety concerns require the use of protective gear.

For the entire time Kerry has operated the plant, a union has represented plant employees. During this time, Kerry has never compensated its employees for the time they take to put on and take off their uniforms and protective gear. Neither the union nor its employees have mentioned the issue in a grievance procedure or through negotiations for a collective bargaining agreement (CBA).

Kerry now moves for summary judgment. Relying on § 3(o) of the Fair Labor Standards Act, it contends that time spent putting on and taking off clothing and protective gear is exempt from time worked, in accordance with the parties' custom and practice under their CBA.

## II. DISCUSSION

To prevail on a motion for summary judgment, a party must demonstrate that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004). No issues of material fact exist where a reasonable juror cannot return a verdict for the nonmoving party. *Morgan v. United Parcel Serv. of America, Inc.*, 380 F.3d 459, 463 (8th Cir. 2004). Under this standard, all reasonable inferences are taken in favor of the nonmoving party. *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005). Where a motion for summary judgment is founded on an affirmative defense, the moving party has the burden to present facts

that establish that defense.[1]  *See Ballard v. Rubin*, 284 F.3d 957, 964 n. 6 (8th Cir. 2002).

### A. The Clothing Exemption

The term "hours worked" is defined by § 3(o) of the FLSA. This definition excludes,

> any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o). Kerry argues that, pursuant to their collective bargaining agreement, the parties had a "custom or practice" that employees would not be paid for time spent putting on or taking off clothing and protective gear.

Kassa counters, in part, that the items donned by employees are exclusively "protective gear" and are outside the meaning of "clothing" under § 3(o). Because this argument challenges whether Kerry met the threshold required to invoke the § 3(o) exemption, it is preferable to address this question first.

#### 1. Definition of Clothing Under the Fair Labor Standards Act

In support of this argument, the plaintiffs advance the decision of the Ninth Circuit in *Alvarez v. IBP, Inc.* 339 F.3d 894 (9th Cir. 2003). The court observed that, because the FLSA assures compensation for workers, it serves a remedial purpose. In accordance with this goal, exemptions under the FLSA are narrowly construed against the employer, and a defendant must demonstrate that its actions

---

[1] Although the parties do not raise the issue, an intervening concern is posed by Rule 56(e), which requires parties on a motion for summary judgment to supply proof through sworn affidavits. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). Because Kerry relies entirely on unsworn declarations, it fails to meet its burden of proof on its affirmative defense. So it is possible to hold, without further analysis, that it cannot prevail on its motion for summary judgment.

"plainly and unmistakably" qualify for the exemption. *Id.* at 904 (citing and indirectly quoting *Arnold v. Ben Kanowsky*, 361 U.S. 388, 392 (1960)).

The Ninth Circuit concluded that, because protective gear served a purpose distinguishable from ordinary clothing, protective gear is outside the definition of clothing under § 3(o). *Id.* at 905. Although the court did not provide an express standard for determining whether items are protective gear, it described such equipment as "required specialized protective equipment." *See id.* The court implied that items such as armored gloves, mesh knife guards, and liquid-repelling outerwear qualified as specialized protective equipment, but non-unique items such as hard hats and goggles did not. *See id.* at 898 n. 2, 904.

Only one other court has since examined the rule of *Alvarez* in a published decision, and that court found *Alvarez* persuasive. *See Gonzalez v. Farmington Foods, Inc.*, 296 F.Supp.2d 912, 930 (N.D.Ill. 2003). But when principles of statutory interpretation are consulted, there is reason to doubt the rule.

Although remedial statutes are generally interpreted in a manner consistent with the remedial purpose, this concern cannot overtake the underlying principle that statutes be interpreted in accordance with their plain meaning. *See Lockhart v. United States*, 126 S.Ct. 699, 702 (2005). Such a rule assures that, where statutory language is unambiguous, it will be applied in accordance with congressional intent. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004).

A statute is ambiguous only if it is susceptible to more than one reasonable meaning. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (foreclosing ambiguity where the meaning of a statute is "coherent and consistent"). Where a statute is ambiguous, and its legislative history shows undisputed congressional intent, that history may aid statutory interpretation. *See Gustafson v. Alloyd Co.*, 513 U.S.

4

561, 580-81 (1995) (holding that where legislative history is considered, "it is preferable to consult the documents prepared by Congress while deliberating"); *see also United States v. Congress of Indus. Orgs.*, 335 U.S. 106, 112-13 (1948) (observing that when interpreting an ambiguous remedial statute, it is advisable to consult "informed congressional discussion").

Taking a position contrary to *Alvarez*, some courts have determined that the meaning of "clothing" under § 3(o) does not exclude protective gear. *See Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n. 3 (5th Cir. 2001); *Davis v. Charoen Pokphand, Inc.*, 302 F.Supp.2d 1314 (M.D.Ala. 2004). Because protective gear is worn in the same manner as other clothing, this interpretation appears plain and reasonable. Assuming that the term "clothing" is ambiguous, however, other authorities support this position.

In *Steiner v. Mitchell*, the U.S. Supreme Court considered whether time spent changing clothes and showering was compensable as hours worked. 350 U.S. 247 (1956). Although the Court did not directly examine the meaning of the term "clothing," the employees in that case were employed at a chemical plant. So the employees were required to wear special suits, for protection from chemicals, during their shifts. The Court held that, because wearing the suits was "essential to the principal activities of the employees," time spent changing was compensable. *Id.* at 254, 258. Thus *Steiner* strongly supports the inference that protective gear is within the meaning of the term "clothing."

This inference receives further support from the legislative history of the Fair Labor Standards Act, which *Steiner* recites in part. One senator acknowledged that chemical plant workers

> are required to put on special clothing and to take off their clothing at the end of the workday, and in some of the plants they are required to take shower baths before they leave.

5

*Id.* at 258 (quoting 93 Cong. Rec. 2297-98 (Mar. 20, 1947) (remarks of Sen. Cooper)).  Thus the legislative history of § 3(o) also demonstrates that protective gear is within the intended meaning of the term "clothing."  Given the plain meaning of the statute and consistent legislative history, the plaintiffs cannot avoid the § 3(o) exemption by asserting that protective gear is not clothing.

Assuming for the sake of argument that the rule of *Alvarez* is controlling, the question then becomes whether items here are "required specialized protective equipment." *See Alvarez*, 339 F.3d at 905.  When all reasonable inferences are taken in favor of Kassa, the record only shows that employees were required to wear pants, shirts, smocks, gloves, hairnets, and safety glasses.  None of these items can reasonably be characterized as specialized protective equipment.  *See id.* at 903-04 (describing hard hats and goggles as "non-unique protective gear").  Thus, the rule of *Alvarez* does not prevent Kerry from asserting the § 3(o) exemption.

### 2.     Custom or Practice Under a Collective Bargaining Agreement

The remaining question, then, involves the parties' custom or practice under their collective bargaining agreement (CBA).  If there was a custom or practice that employees are not paid for time spent donning or doffing clothing, then that time is not part of hours worked.  *Hoover v. Wyandotte Chemicals Corp.*, 455 F.2d 387, 387-88 (5th Cir. 1972).

To determine whether a custom or practice exists, the underlying inquiry is whether particular conduct becomes part of a CBA "through a prolonged period of acquiescence."  *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001) (citing *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 153-54 (1969)).  When examining whether acquiescence has taken place, courts uniformly look to whether the issue was raised and then abandoned by the union.  *See id.* at 225-26;

*Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 (5th Cir. 2001); *Arcadi v. Nestle Food Corp.*, 38 F.3d 672, 674-75 (2d Cir. 1994). Although the issue may be abandoned in the context of negotiations toward a collective bargaining agreement, *see Hoover*, 455 F.2d at 387-88, it is not necessary that the issue be abandoned in the course of formal negotiations, *Turner*, 262 F.3d at 226.

When all reasonable inferences are taken in favor of Kassa, the record fails to show that employees ever disputed being paid for time spent putting on or taking off clothing. Because they did not raise the issue, they also did not abandon it. Thus they had no opportunity to acquiesce and no custom or practice was established.

Kerry counters that acquiescence may be established, without any dispute, where employees are consistently silent about the issue. In support of this proposition, Kerry principally relies on two Eighth Circuit cases; two unpublished cases; and a ruling by the National Labor Relations Board (NLRB).

The Eighth Circuit cases only offer a general discussion of custom and practice, and they do not involve circumstances where employees failed to lodge a grievance. *See Alton v. S. Lodge No. 306 Broth. Rwy. Carmen v. Alton & S. Rwy. Co.*, 849 F.2d 1111, 1114 (8th Cir. 1988); *Broth. of Maintenance Way Employees, Lodge 16 v. Burlington R.R. Co.*, 802 F.2d 1016, 1022 (8th Cir. 1986). Although the NLRB decision does involve a general failure to lodge a grievance, this decision also does not involve § 3(o), and the conduct of the employer was too intermittent to establish a custom or practice. *See In re Philadelphia Coca-Cola Bottling Co.*, 340 N.L.R.B. No. 44 (Sept. 29, 2003).

The unpublished cases, however, specifically discuss custom and practice under § 3(o). In one of these cases, the court expressly noted that the issue was raised in formal negotiations. *See Saunders v. John Morrell & Co.*, No. C88-4143, 1991 WL 529542 at *4 (N.D.Iowa Dec. 24, 1991). The other

7

acknowledges some negotiations, without finding whether the issue was raised at one plant, and does not expressly determine that employees' silence established a custom or practice. *Huntington v. Asarco, Inc.*, No. 201-133J, 2002 WL 1315800 at *2 (N.D.Tex. Jun 13, 2002). So neither case offers support for Kerry's position.

Contrary to the position argued by Kerry, federal authorities consistently require knowing acquiescence before finding a custom or practice under a CBA. *See, e.g., Cruz-Martinez v. Dep't of Homeland Security*, 410 F.3d 1366, 1370 (Fed. Cir. 2005); *Nat'l Labor Relations Bd. v. New York Telephone Co.*, 930 F.2d 1009, 1011 (2d Cir. 1991). And to show the knowledge required for such acquiescence, courts look to whether the union or its employees have taken some action, whether through a grievance or in negotiations for a CBA, complaining of the employer's conduct. *See J. Vallery Elec., Inc. v. Nat'l Labor Relations Bd.*, 337 F.3d 446 (5th Cir. 2003); *Broth. of Locomotive Engineers v. Springfield Terminal Rwy. No. 1*, 210 F.3d 18, 33-34 (1st Cir. 2000). As a result, a tacit agreement is not enough to establish a custom or practice. *J. Vallery Elec., Inc.*, 337 F.3d at 453.

To prevail on its motion for summary judgment, Kerry has the burden to establish its defense. But its employees never challenged its decision not to compensate them for time spent changing clothes, and so Kerry lacks any evidence that its employees acquiesced in the decision. Kerry cannot establish a custom or practice that exempts this time from hours worked under § 3(o), and therefore, it is appropriate that its motion for summary judgment be denied.

## III.    RECOMMENDATION

The items used by Kerry's employees constitute "clothing" within the meaning of § 3(o) of the Fair Labor Standards Act. In accordance with this section, Kerry may exempt time spent putting on and taking

off clothing from hours worked, if the parties have that custom or practice under their CBA. But Kerry lacks proof that its employees knowingly acquiesced to such a custom or practice, and as a result, it does not qualify for the § 3(o) exemption. This Court recommends, therefore, that Kerry's motion for summary judgment be denied.

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Kerry's motion for summary judgment (Doc. No. 12) be **DENIED.**

2. Because Kerry does not oppose the plaintiffs' pending motions to amend for reasons other than those raised in its motion for summary judgment:

    a. The plaintiffs' motions to amend (Doc. Nos. 7, 24) be **GRANTED.**

    b. The plaintiffs promptly file their most recent proposed amended complaint.

Dated this 10th day of October, 2006.   s/Jeanne J. Graham

JEANNE J. GRAHAM
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by October 31, 2006. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.